# ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

**Date:** Aug 31, 2015
**Offender (Please Print):** Moore, Lamont
**ID#:** B50182
**Present Facility:** Western Illinois Correctional
**Facility where grievance issue occurred:** Vandalia

### NATURE OF GRIEVANCE:
- [ ] Personal Property
- [ ] Mail Handling
- [ ] Restoration of Good Time
- [ ] ADA Disability Accommodation
- [x] Staff Conduct
- [ ] Dietary
- [x] Medical Treatment
- [ ] HIPAA
- [ ] Transfer Denial by Facility
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Other (specify)
- [x] Disciplinary Report: 6/22/2015 Vandalia
   *Date of Report / Facility where issued*

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
  Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
  Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
  Chief Administrative Officer, only if EMERGENCY grievance.
  Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

Incident began at about 1200 hrs. on 6/18/15 when L. Moore observed inmate K. Sample (M46181) attempting to 'break in' to Moore's locked property box. Moore confronted Sample and an argument ensued. Moore reported that incident to Corrections Officer Gatlin, who did nothing, even though Moore clearly told the C.O. that there was trouble brewing. The lack of action by the C.O. led to Moore and Sample being re-united in the same room where at, or about, 1:30 PM (two hours later), Sample struck Moore with a closed fist (w/ a key protruding outward), in his eye. The key's shank penetrated the eye and upon withdrawal dislodged the entire left eyeball from the socket, and ruptured the eye by punching a jagged hole through the front and back of the eye. Moore was transferred to a hospital and was seen by an Emergency Room General Practitioner, but not an eye

**Relief Requested:** Immediate access to eye specialist (optometrist) and appropriate surgery to remedy current pain and discomfort, which may include the repair of, or removal of, the left-eye of L. Moore. Needed expert diagnosis, prognosis, prescribed treatment not previously provided.

[x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

*Lamont Moore* — Offender's Signature — B50182 — 8/1/15

(Continue on reverse side if necessary)

### Counselor's Response (if applicable)

**Date Received:** __/__/__
- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277.

**Response:**

*RECEIVED AUG 12 2015 ADMINISTRATIVE REVIEW BOARD*

Print Counselor's Name / Counselor's Signature / Date of Response

### EMERGENCY REVIEW

**Date Received:** __/__/__
Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature / Date

Distribution: Master File; Offender — Page 1 — DOC 3046 (8/2012)

SPECIALIST, AND THE EYE WAS RE-INSERTED, BUT NOT REPAIRED. WHILE HEAVILY SEDATED AND W/OUT COUNSEL PRESENT, MOORE WAS INTERVIEWED BY OFFICERS FROM VANDALIA WHO THEN WROTE AN INCIDENT REPORT THAT UPON REVIEW IS TOTALLY FALSE. IN IT, THE INCIDENT IS REPORTED TO BE CAUSED BY A "CARD GAME" - WHICH NEVER HAPPENED. INSTEAD OF A BRUTAL, UNPROVOKED ATTACK BY K. SAMPLE ON L. MOORE, WHERE MOORE WAS STABBED BY A KEY IN SAMPLE'S HAND WHICH CAUSED THE DAMAGES. MOORE WAS NOT PLAYING CARDS W/ SAMPLE AT ANY TIME PRIOR TO THIS ALTERCATION, AND ALL REPORTS STATING HE WAS, ARE INTENTIONAL FABRICATIONS. THOSE ALTERED DISCIPLINARY REPORTS WERE ALTERED TO ATTEMPT TO RELIEVE VANDALIA AND IDOC OF ANY RESPONSIBILITY IN FAILING TO PREVENT THE ATTACK AND FAILING TO PROVIDE SUFFICIENT SECURITY FOR MOORE'S PERSONAL PROTECTION. SUBSEQUENT TO FALSIFYING THE HISTORY OF THE EVENT, OTHER IDOC OFFICERS (S. RITCHEY) REPORTEDLY OBTAINED A "GUILTY PLEA" FROM MOORE (WHILE MOORE WAS SEDATED) WHICH, AGAIN, NEVER HAPPENED. THEN THE DISCIPLINARY COMMITTEE OF E. HOLT AND C. WEBBER FABRICATED A DISCIPLINARY FINAL REPORT WHICH ALSO ALLEGES MOORE PLED GUILTY, WHEN MOORE DENIES EVER DOING SO. MOORE WAS/IS A VICTIM OF A BRUTAL ASSAULT WHICH HAS COST HIM ONE OF HIS EYES AND IS PERMANENTLY DISFIGURED AND HANDICAPPED, AND POSSIBLY UN-EMPLOYABLE FOR LIFE AT NO FAULT OF HIS. IDOC OFFICERS ARE "CIRCLING THEIR WAGONS" IN FABRICATING THESE REPORTS WHICH PUT PARTIAL BLAME ON MOORE BY RE-ENGINEERING THE EVENT. STATING THAT CARD GAMES CAUSED THE FIGHT, THAT MOORE WAS A PARTICIPANT IN THOSE GAMES, AND A WILLING PARTICIPANT IN THE "FIGHT", WHICH IS AN UNTRUE CLASSIFICATION OF THE FACTS. MOORES' CONVICTION OF THE "MAJOR INFRACTION" OF FIGHTING ERRONEOUSLY CATEGORIZES THE ASSAULT OF HIM BY SAMPLE, AND IS A BLATANT ACT TO PUNISH THE VICTIM, SO AS TO LIMIT THE BLAME DUE TO THE IDOC AND THE OFFICERS AT VANDALIA, C.C. MOORE WAS SENTENCED (IN ERROR) TO (1) MONTH C-GRADE, (1) MONTH SEGREGATION, REVOCATION OF (1) MONTH GOOD TIME CREDIT, DENIED PHONE PRIVILEGES FOR (1) MONTH, (1) MONTH COMMISSARY AND VISITATION PRIVILEGES REVOKED AS WELL - ALL FOR BEING THE VICTIM OF FIRST, THE BRUTAL ASSAULT, AND SECOND, IDOC'S COLLABORATED, CONSPIRATORIAL, EFFORTS TO "RE-INVENT" THE INCIDENT WHICH OF COURSE BLAMES MOORE FOR BEING STABBED BY A VIOLENT OFFENDER (SAMPLE) WHO SHOULD NEVER HAVE BEEN IN A MINIMUM SECURITY PRISON IN THE FIRST PLACE. BUT MOREOVER, TO SHIFT BLAME FROM THE FIRST C.O. GRADE WHO DID NOT TAKE SUFFICIENT ACTION WHEN MOORE TOLD HIM ABOUT THE BOX BREAK-IN. BUT, THE RESULT WAS/IS A LOST EYE, BECAUSE AN EYE SPECIALIST WAS NEVER CONSULTED INITIALLY, WHEN URGENT ACTION WAS REQUIRED TO SAVE THE EYE, AND THAT LACK OF EFFORT CAUSED THE PERMANENT LOSS OF THE EYE AND THE DISFIGUREMENT - DISABILITY - HANDICAP THAT MOORE CURRENTLY HAS. FURTHER, THE TRANSFER TO A HIGHER CUSTODY LEVEL PRISON (WICC) AND THE (30) DAY SEG TIME GUARANTEED MOORES' LOSS OF HIS EYE AND DENIED HIM ACCESS TO HIS FAMILY AND THE SUPPORT AND HELP THEY WOULD'VE PROVIDED - AND THAT TOO - WAS INTENTIONAL.

DURING THIS TIME, WHEN REAL OPTHAMOLOGICAL HELP WAS NEEDED AND DENIED, MOORES' EYE DIED AND WILL NEVER BE RENEWED, IS BEYOND SURGICAL REPAIR, AND IS LOST TO MOORE FOR LIFE! VANDALIA C.C. PUNISHED THE VICTIM, DENIED ADEQUATE HEALTH CARE, AND FABRICATED DOCUMENTS TO PLACE UNDUE BLAME, WHERE IT DOES NOT BELONG, ALL TO LIMIT BOTH IDOC'S FAULT AND THE VANDALIA OFFICERS' CULPABILITY IN FAILING TO PROTECT MOORE FROM SAMPLE.